C. C. PARTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81214. Promulgated June 24, 1938.

*John D. Martin, Jr., Esq.,* and *Oliver P. Cobb, C. P. A.,* for the petitioner.

*Harry R. Horrow, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency in income tax in the amount of $4,537.31 for the period January 1 to July 31, 1932. The only issue is whether the Commissioner erred in com-

puting the deficiency pursuant to the provisions of sections 47 and 101 of the Revenue Act of 1932. All of the material facts have been stipulated by the parties and the stipulation is hereby adopted for all purposes of this proceeding.

The petitioner kept his records and made his Federal income tax return upon a calendar year basis for the years up to and including 1931. He made a timely application for permission to change his accounting period thereafter to a fiscal year ending July 31 and the Commissioner granted the permission. He then filed a return for the period of seven months from January 1 to July 31, 1932. That short period and that return were in accordance with the permission granted to change the accounting period. The correct items of income and deductions for the period of seven months are as follows:

| | | |
|---|---|---:|
| 1. | Cotton business (loss) | ($6,625.16) |
| 2. | Fruit business | 16,840.48 |
| 3. | Interest | 3,150.18 |
| 7. | Rents | 1,168.83 |
| 8. | Ordinary gains on stock sales | $26,436.05 |
| 10. | Dividends | 3,417.19 |
| 11. | Profit Commodities | 2,857.80 |
| 12. | Total | 47,245.37 |
| 19. | Deduction of taxes | 1,998.12 |
| | Loss from sale of shares of stock, which were capital assets, as defined by Section 101 (c) (8), and which loss was a deduction from gross income within the meaning of Section 23 (e) (2), of the Revenue Act of 1932 | 49,758.21 |
| 20. | Net Loss | (4,510.96) |

The petitioner contends that the provisions of section 47 (c) and (d) of the Revenue Act of 1932 have no application, or, if they are applicable, at least they have no application to the capital net loss sustained by the petitioner. The Commissioner applied those provisions in computing the deficiency.

Section 47 is entitled "Returns for a period of less than twelve months." Subsection (a) provides, inter alia, that if a taxpayer, with the approval of the Commissioner, changes from a calendar year to a fiscal year, a separate return shall be made for the short period between the close of the last calendar year and the date designated as the close of the fiscal year. Subsection (b) provides that the income shall be computed on the basis of the period for which the separate return is made. Subsections (c) and (d) are as follows:

(c) INCOME PLACED ON ANNUAL BASIS.—If a separate return is made under subsection (a) on account of a change in the accounting period, the net income, computed on the basis of the period for which separate return is made, shall be placed on an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in the period for which the sepa-

rate return is made. The tax shall be such part of the tax computed on such annual basis as the number of months in such period is of twelve months.

(d) CAPITAL NET GAINS AND LOSSES.—EARNED INCOME.—The Commissioner with the approval of the Secretary shall by regulations prescribe the method of applying the provisions of subsections (b) and (c) (relating to computing income on the basis of a short period, and placing such income on an annual basis) to cases where the taxpayer makes a separate return under subsection (a) on account of a change in the accounting period, and it appears that for the period for which the return is so made he has derived a capital net gain, or sustained a capital net loss, or received earned income.

The Commissioner did not promulgate any regulations under subsection (d). He filed no brief in this case. Subsections (c) and (d) of section 47, when read with section 101 (b), clearly require the computation which the Commissioner has made. The provisions of section 47 (c) and (d) are made to apply in every case where a separate return must be made on account of a change in the accounting period. There is no justification for failing to apply them in cases involving capital net gains, capital net losses, or where earned income has been received.

The petitioner changed his accounting period. A return was filed for the short period. That is the period before the Board. Subsection (c) requires that the "net income" for that period shall be placed upon an annual basis by multiplying the amount thereof by twelve and dividing by the number of months included in the short period. "Net income" is defined in section 21 as the gross income computed under section 22, less the deductions allowed by section 23. The net income of this petitioner for the short period thus computed was a minus quantity, that is, a loss of $4,510.96. Obviously no tax would be due upon the petitioner's "net income" and no consideration need be given to the question of whether "net income", as used in (c), could include a minus quantity. Cf. *Woolford Realty Co.* v. *Rose,* 286 U. S. 319; *Anna F. Ardenghi,* 37 B. T. A. 345, 349. Here the loss of $4,510.96 is not used in any way in the computation of the deficiency.

The tax results from the computation required under section 101 (b). One of the deductions allowed by section 23 was an amount of $49,758.21, which was a capital net loss within the meaning of section 101. Section 101 (b) provides that, in the case of a taxpayer who sustains a capital net loss, the tax in lieu of all other taxes shall be determined as follows:

A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted, and the total tax shall be this amount minus 12½ per centum of the capital net loss; * * *

"Ordinary net income" is "net income" computed after excluding all items of capital gain, capital loss, and capital deductions. The

ordinary net income of this petitioner for the short period amounted to $45,247.25. Since section 101 provides that a partial tax shall be computed upon the basis of the ordinary net income at the rates and in the manner as if section 101 had not been enacted, "ordinary net income" for the purpose of that computation becomes "net income." That net income must be placed upon an annual basis under the provisions of section 47 (c) in order to find the tax on it "at the rates and in the manner as if" section 101 had not been enacted. Section 101 (b) provides that 12½ percent of the capital net loss shall be deducted from the tax on the income thus computed. Here a question of detail might arise, in the absence of regulations, which, however, will not affect the result. If the partial tax on the ordinary net income is first reduced from that for the annual period to that for the shorter period by multiplying by $\frac{7}{12}$, then 12½ percent of the actual capital net loss should be deducted. But the same amount of tax would be determined by deducting from the partial tax on an annual basis, 12½ percent of the capital net loss on an annual basis and reducing the result to the actual tax for the short period basis by multiplying by $\frac{7}{12}$. It is apparent that Congress has been logical in this connection, for section 47 (d) clearly indicates that a capital net loss must be placed upon the same basis as the tax before the 12½ percent is deducted. This is clear from a reading of section 47 (d), which section would have no meaning otherwise. The provisions of section 47 (c) and (d) and the provisions of section 101 (b) must be read together. They then leave no doubt that the partial tax on the ordinary net income and the capital net loss must be placed upon the same basis before 12½ percent of the latter is deducted from the former.

The Commissioner has proceeded in accordance with the principles above discussed. He has placed all factors upon an annual basis by multiplying each by the fraction $\frac{7}{12}$.[1] Thus actual ordinary net income for the short period became $77,566.72 upon an annual basis and the capital net loss of $49,758.21 became $85,299.79 upon an annual basis. He then made the computation of tax upon the item of $77,566.72. It was necessary in that connection for him to place dividends upon an annual basis and also to use the full personal exemption of $2,500. See section 47 (e). He deducted 12½ percent of $85,299.79 from the tax thus computed, leaving $7,778.24 as the total tax upon an annual basis. He took $\frac{7}{12}$ of that tax as the tax for the short period of seven months and thus determined the deficiency of $4,537.31. That method complies with the provisions of section 47 (c) and (d) and with the provisions of section 101 (b).

---

[1] The notice of deficiency shows that he also placed the loss of $4,510.96 upon an annual basis, but the resulting figure of $7,733.07 was not used in any way in computing the tax upon the annual basis or the deficiency.

Consequently, there is no reason to disturb the Commissioner's determination.

The conclusion thus reached is in accordance with, rather than contrary to, the purpose which Congress had in mind in enacting provisions like those contained in section 47 (c) and (d). A provision similar to that contained in (c) first appeared as section 226 (c) of the Revenue Act of 1921. The provision corresponding to (d) first appeared as section 226 (d) of the Revenue Act of 1924. Similar provisions were retained in all subsequent acts until the Revenue Act of 1934. Congress then changed the entire scheme of capital gains and losses and the provisions of (d) were dropped because in that new scheme they were no longer necessary or appropriate. House Rept. 704, 73d Cong., 2d sess., pp. 9, 10, 24. Senate Report 558, 73d Cong., 2d sess., pp. 12, 29. The purpose of the provisions was to prevent taxpayers from avoiding tax through the use of a short period. Ways and Means Committee, House Report 350, 67th Cong., 1st sess., p. 13; Senate Finance Committee, Senate Rept. 275, 67th Cong., 1st sess., p. 17; Conference Report 486, 67th Cong., 1st sess., p. 31; Ways and Means Committee, House Report 179, 68th Cong., 1st sess., p. 23; Senate Finance Committee, Senate Report 398, 68th Cong., 1st sess., p. 27. The tax rates were calculated to produce the desired revenue if applied to the income of taxpayers for a full period of 12 months. They would produce much less revenue if the full period could be divided in any way into shorter periods, or if a short period could be inserted between two full periods. The reduction in tax would result from the fact that the taxes were graduated and increased in percentage as the income of a taxpayer increased. The method adopted by Congress to prevent avoidance was to require (through the provisions above discussed) that the tax be computed on an annual basis (by placing the income for the short period upon an annual basis) and then taking the proportion of the tax for the full period which would be properly allocable to the short period. The taxpayer would thus be required to pay for the short period a proportionate part of the tax which he otherwise would have been required to pay for the full period of twelve months, assuming that his income for the full period had been in proportion to his income for the short period. The computation of the Commissioner in this case has carried out exactly the intent of Congress, whereas the contentions made by the petitioner would result in the very avoidance which Congress intended to prohibit. The petitioner, by completely ignoring the provisions of section 47 (c) and (d), contends that the correct tax for the period of seven months is $799.42.[2] Yet the computation made by the Commissioner in accord-

___

[2] The taxpayer seeks to pay for $7/12$ of a year only a little more than $1/10$ of the tax for a year.

ance with the statute, shows that, had the petitioner's earnings and losses proceeded for a full year in exact proportion to the way they did occur during the first seven months of the year, his income tax for the year would have been $7,778.24. Seven-twelfths of the latter amount, or $4,537.31, is the portion applicable to the short period. The interpretation sought by the petitioner would thus enable him to avoid tax to the extent of the difference between the improper figure of $799.42 and the correct tax liability of $4,537.31, as determined by the Commissioner.

Reviewed by the Board.

*Decision will be entered for the respondent.*

HILL concurs only in the result.